Dickman, J.
The original action was commenced in the court of common pleas of Brown county, by the defendants in error, James Halstead and others, against George W. Drake, treasurer, aud Enoch E. Roney, auditor of Brown county, and Joshua Lear and others, road commissioners, *567 to enjoin the collection of taxes levied upon real estate and personal property of the defendants in error, for the purpose of constructing a free turnpike road. In the year 1877, a free turnpike road named the “Boyle’s Mill and Blanchester” free turnpike, was laid out and established in Brown county, under the provisions of the “ act to authorize the board of county commissioners to lay out and establish free turnpike roads,” as amended March 28th, 1876 (73 Ohio Laws, 96). The Blanchester turnpike terminates at the county line with which it forms an obtuse angle, and by drawing a line from this terminus of the pike at right angles with its last course, certain lands of the defendants in error lying westerly of the pike, will be left outside and beyond the right line and terminus. Upon the west side of the turnpike runs an improved count}1- road— designated on the county road records as the “T. D. Harris” road — more than one mile and less than two miles distant from the turnpike. A township road — located and laid out prior to the institution of proceedings for the construction of the turnpike — begins in the pike, about one fourth of a mile south-east from its terminus at the county line, and ends in the Harris or county road. Instead of dividing the territory between the turnpike and the county road, and levying extra taxes for the construction of the pike only upon lands and personal property within the one half distance, extra taxes were charged on lands and personal property of certain of the defendants in error situate outside and beyond the terminus of the turnpike, and on lands and personal property of certain other of the defendants in error, lying beyond the division line of territory between the turnpike and county road, and within one mile from the pike. There was no order to the road commissioners to extend the bounds of the turnpike to one mile on either side of the same, and no report from them that the extra taxes levied upon property within the bounds of the turnpike, were insufficient to make a good and substantial road,- and there was no petition for such extension of bounds signed, as required by statute, by a majority of res *568 ident land-owners owning land within the bounds of the territory as sought to be extended. The plaintiffs below prayed in their petition, that the county treasurer might be enjoined from collecting all taxes levied for the road improvement upon their personal property, upon their lands situate beyond the terminus of the ‘ turnpike, and upon other lands beyond half the distance from the turnpike to the Harris road. The petition was dismissed by the court of common pleas. On appeal by the plaintiffs, the district court granted a perpetual injunction against the county treasurer and auditor, and decreed that the personal property of certain of the plaintiffs and all lands of the plaintiffs situated beyond the terminus of the turnpike, and beyond half the distance from thé turnpike to the county road, should not be taxed for the improvement. The road commissioners, county treasurer and auditor, as plaintiffs in error, ask for a reversal of the judgment of the district court.
The questions which the record suggests for our consideration, involve the construction and application of Section 8 of the act for laying out and establishing free turnpike roads, as amended March 28,1876. That Section, so far as material to the case at bar, reads as follows: “Section 8 : That for the purpose of constructing free turnpike roads authorized by this act extra taxes, when levied as hereinbefore provided, shall be on all real and personal property within one mile on each side of said free turnpike road except, that when any road improvement, or free turnpike built and completed under any of the turnpike laws of this state, begins'or terminates in the proposed free turnpike, or when any of such roads or any toll, unimproved state or county road, being unconnected with the same, shall lie, be or run upon either side of said proposed road within less than two miles, then the taxes shall only be levied upon such lands and personal property as lie within one half the distance of such roads; provided, that no division of territory, or division of taxation of lands or personal property shall be made with any other road improvement, free turn *569 pike road, state or county road, except as herein provided for, nor with any township road. But if said road commissioners should report to said county comissioners that the extra taxes levied within the bounds of said road are insufficient to make a good and substantial road, then the county commissioners, if in their opinion the public interest requires it, may order said road commissioners to extend the bounds of said free turnpike road to one mile on either side of the same, when a majority of the resident land-owners owning land within the bounds of the territory proposed to be extended shall have signed said petition therefor.”
The provision in this section which requires that extra taxes shall be levied on real and personal propert}'- within one mile on each side of the turnpike road, does not, we think, embrace lands within one mile as measured from the end of the road, but only as measured from either side of the road and between the termini of the same. The lands therefore, situated beyond the terminus of the turnpike, and lying outside of the line drawn from the terminus at right angles with the last course of the road, were not subject to taxation. The legislative intent seems plain. If it had been designed to extend the tax limits, so as to include territory and personal property beyond the end of the turnpike, the legislature, it is presumed, would have made it manifest by appropriate language. It did not fail to do so in the act commonly known as the two mile road improvement law, which provided in amended Section 4 (71 Ohio Laws, 94), that no lands should be assessed which did not lie within two miles of the proposed improvement, and that such distance of two miles might “be computed in any direction from either side, end or terminus of said road.” The reasonableness of such a construction of the statute as will confine the assessment to real and personal property on each side of the turnpike under consideration, and between the termini of the same, becomes more apparent in view of the fact, that a county road, unconnected with the turnpike, runs, upon the westerly side thereof, within less than two miles. As the taxes in such case can only be levied upon *570 such lands and personal property as lie within one half the distance of the county road, the evident design of the statute is to subject only such property as lies between the two roads. This would exempt from assessment lands and personal property which lie beyond the terminus of the turnpike and cannot therefore lie between it and the county road. As we construe the statute, the ends do not mean sides of the turnpike; and it would be a strained construction to hold, that the authority to levy extra taxes on all real and personal property within a given. distance oh each side of the turnpike, carries with it the power to tax such property within like distance beyond the end of the road.
It is urged, however, in behalf of the plaintiffs in error, that if the property beyond the terminus of the turnpike is not liable to taxation for its construction, still, the bounds of the turnpike extend to one mile on either side of the same and all real and personal property within that distance is taxable. It is contended, that as a township road runs from the Harris road to the turnpike, the last two roads — less than two miles apart — are not unconnected within the meaning of the statute, and that therefore there can be no division of interjacent territorj*', whereby extra taxes shall be leviable only upon .such property as lies within one half the distance of the Harris road. Neither a township nor a county road running between the Harris road and the turnpike would, in our view, constitute such a connection as is contemplated by the statute. Such a road might be said to connect with the turnpike or the Harris road, while the latter roads, as between themselves, would be unconnected in the sense of the statute. Such a road might be a medium of communication between the turnpike and the Harris road, but the connection referred to in Section 8, is rather such an one as would be formed by one road beginning or terminating in another. The language of the section “ when any road improvement or free turnpike road built and completed under any of the turnpike laws of this state, begins or terminates in the proposed free turnpike, or when any of such roads or any toll, unimproved state or *571 county road being unconnected with the same shall lie, be or run, &c.,” would indicate a connection by direct and immediate junction and contact. The Harris road and the turnpike being unconnected within the meaning of the statute, only such real and personal property of the defendants in error should have been assessed for the purpose of constructing the turnpike as lay within one half the distance between the two roads; and property situated beyond the dividing line and nearer to the Harris road than to the proposed turnpike, should have been exempt from taxation. '
If the extra taxes levied within the bounds of the turnpike proved insufficient to make a good and substantial road, a method was prescribed by the statute for extending the bounds to one mile on either side of the turnpike, notwithstanding an unimproved county road might run upon one side of the turnpike within less than two miles, and unconnected with the same. But, the record does not disclose that there was any extension of the bounds of the turnpike in conformity with the requirements of the statute. There was no petition, as we have seen, for an extension, signed by a majority of the, resident land-owners owning lands within the bounds of the territory as proposed to be extended — lands situate beyond half the distance from the turnpike to the Harris road, and within one mile of the turnpike; and without such petition so signed, the county commissioners acquired no jurisdiction to order’ the road commissioners to extend the bounds of the turnpike for the purpose of taxation. In Burgett v. Norris, 25 Ohio St., 308, it was held, that under the act of April 5, 1866, authorizing county commissioners to construct roads, on petition of a majority of resident land-owners along and adjacent to the line of such roads, it was essential in order to give the commissioners jurisdiction, that it should have been made to appear, that the petition presented to them was “ signed by a majority of the land-owners resident within said county, whose lands will be assessed for the expense of the same.” And in Hayes v. Jones, 27 Ohio St., 218, it was also held, under a subsequent statute for the same purpose, that the *572 jurisdiction of the board of county commissioners to make the final order for the road improvement, is special and conditioned upon the consent, at the time the final order is to be made, of a majority of the resident land-owners who are to be charged with the costs of the improvement. On the subject of assessments for local improvements, Judge Cooley, in his treatise on Taxation, p. 464, says, “ Everyone of the substantial requirements of the statute must be regarded as a condition precedent to the validity of any assessment. A common requirement is, that the improvement should be asked for or assented to by a majority or some other proportion of those who would be taxed. The want of a compliance with this requirement is fatal in any stage of the proceedings.”
But it is claimed, that though the county commissioners may not have acquired jurisdiction to order the bounds of the turnpike to be extended, and though lands beyond the dividing line of the territory between the turnpike and the Harris road may have been illegally assessed, the defendants in error are estopped from objecting to the illegality of the assessment, by reason of their silence and failure until after the turnpike was substantially completed, to object to the expenditure of money and labor by the contractors, in its construction. There is no satisfactory evidence that the defendants in error participated in causing the road improvement to be made. We do not find that knowledge was brought home tó them, before the completion of the improvement, that the bounds of the turnpike- had not been extended according to law; that a majority of the resident land-owners owning land within the bounds of the road, as sought to be extended, had not signed a petition for such extension. The record does not disclose adequate proof, that the real and personal property of the defendants in error beyond the dividing line of the intermediate territory, received special benefit from the road improvement so as to work the estoppel claimed. Applying the principles recognized in Tone v. Columbus, 39 Ohio St., 281, and other well considered cases, the defendants in error were not estopped, *573 from calling in question the validity of the assessment upon their property for the purpose of the road improvement. Viewed in the light of the aforegoing considerations, the judgment of the district court must therefore be affirmed.

Judgment accordingly.